UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YVONNE E. FORBES,

     Petitioner,

v.                                    Case No. 2:20-cv-534-SPC-NPM

SECRETARY, DOC,

     Respondent.

_____

## OPINION AND ORDER[1]

Yvonne E. Forbes ("Petitioner"), a prisoner in the custody of the Florida Department of Corrections, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition to the petition, and Petitioner filed a reply. (Doc. 13; Doc. 16).

After carefully reviewing the pleadings and the entire record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief on any of the grounds raised in her petition. Further, because the Court was able to

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

resolve each ground raised in the petition on the record, an evidentiary hearing is not warranted.   *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## I.     Background

On December 11, 2007, the State of Florida charged Petitioner with one count of scheme to defraud, in violation of Florida Statute § 817.034(4)(a). (Doc. 13-2 at 13).   Subsequently, the state amended the information to charge Petitioner with scheme to defraud under Florida Statute § 817.034(4)(a) (count one); using a public record to commit a felony under § 817.569(2) (count two); and aggravated white collar crime under Florida Statute § 775.0844(4) (count three).   (*Id.* at 42).

Petitioner's two-day trial began on April 7, 2010.   (Doc. 13-2 at 47). Petitioner was represented by attorney Michael Schneider ("Counsel").   (*Id.*) At trial, the state presented evidence showing that Petitioner had engaged in several real estate transactions with two friends, Yvette Rose and Juliet Washington.   Ms. Rose and Ms. Washington testified that they gave money to Petitioner for the purchase of property in Collier County, and Petitioner provided deeds showing them as the owners of the properties.   However, the deeds were not valid because the lots were already owned by others, and Petitioner had no permission to sell them.   Ms. Rose also testified that she was "tricked" into purchasing Petitioner's home, which had a foreclosure pending against it.   A former Collier County detective testified that Petitioner

fraudulently obtained about $680,000 from the two victims over the course of a few months. (Doc. 13-2 at 47–564 (Trial Transcript); *see also* discussion *infra* Ground Five).

A jury found Petitioner guilty on counts one and two, and the state entered a notice of nolle prosequi on count three. (Doc. 13-2 at 45, 567). The court sentenced Petitioner to thirty years in prison on count one, followed by five years' probation on count two. (*Id.* at 573–74, 579–99). Florida's Second District Court of Appeal ("Second DCA") affirmed Petitioner's convictions and sentences. (*Id.* at 670); *Forbes v. State*, 75 So.3d 278 (Fla. 2d DCA 2011).

On April 5, 2012, Petitioner filed an eighteen-ground (with multiple sub-grounds) motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"). (Doc. 13-2 at 734–89). The postconviction court summarily denied fourteen grounds, granted an evidentiary hearing on six grounds, and dismissed two grounds with leave to amend. (Doc. 13-4 at 2–11). After Petitioner amended her grounds, the postconviction court denied two grounds and granted an evidentiary hearing on two grounds. (*Id.* at 666–71). Following an evidentiary hearing, the postconviction court denied all remaining grounds. (Doc. 13-5 at 2–151, 153–58). The Second DCA affirmed per curiam without a written opinion. (*Id.* at 346).

On April 12, 2015, Petitioner filed another motion under Rule 3.850 of the Florida Rules of Criminal Procedure ("Second Rule 3.850 Motion").   (Doc. 13-5 at 359–66).   After holding a second evidentiary hearing, the postconviction court denied the petition.   (*Id.* at 476–546; Doc. 13-6 at 2–6). The Second DCA affirmed in a written opinion.   (Doc. 13-6 at 138–44); *Forbes v. State*, 269 So.3d 677 (Fla. 2d DCA 2019).

Petitioner timely provided her federal habeas petition to prison officials for mailing on July 21, 2020.

## II.   Legal Standards

### A.   The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).   In this context, clearly established federal law consists of the governing legal principles, and not the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued

its decision.  *White v. Woodall*, 572 U.S. 415, 420 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either:  (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an unreasonable application of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (*quoting Williams*, 529 U.S. at 406).

The standard to obtain relief under 28 U.S.C. §2254(d) is both mandatory and difficult to meet.  To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *White*, 572

U.S. at 420 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance. *Sellers*, 138 S. Ct. at 1196.

## B.    Ineffective Assistance of Counsel

The Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). A petitioner must establish that counsel's performance was deficient

and fell below an objective standard of reasonableness <u>and</u> that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Id.* at 688. In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Proving *Strickland* prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

### C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b)(1). Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct

alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). Under the similar doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

A petitioner can avoid the application of the exhaustion or procedural default rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate a reasonable probability the outcome of the proceeding would have differed. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray*

*v. Carrier*, 477 U.S. 478, 479–80 (1986).

## III.   Discussion

Petitioner raises eighteen grounds in her habeas petition.[2]   Except as specifically discussed in this Order, Petitioner exhausted these claims by either raising them on direct appeal or by raising them in her Rule 3.850 Motion and appealing the postconviction court's denial of the motion.   In both instances, the Second DCA affirmed per curiam without a written opinion.

A state court's denial of a claim raised on direct appeal does not require a written opinion from the state court to be entitled to section 2254(d) deference.   *See Harrington*, 562 U.S. at 98.   Rather, in a case with a silent affirmance, "a habeas court must determine what arguments or theories . . . <u>could have supported the state court's decision</u>; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court decision]."   *Id.* at 102 (emphasis added).   In other words, when a state court's decision is unaccompanied by an explanation, the habeas petitioner must still meet her burden "by showing there was no reasonable basis for the state court to deny relief."   *Id.*

---

[2] This petition is not a model of clarity.   The claims raised are conclusory and repetitive. Nevertheless, the Court attempts to address each of Petitioner's claims as best it is able. However, even if not enumerated in this order, all allegations raised by Petitioner here have been carefully considered by the Court.

Likewise, the appellate court's summary rejection of the claims raised in Petitioner's Rule 3.850 Motion—even without explanation—qualifies as an adjudication on the merits, which warrants deference. Therefore, for the claims raised in Petitioner's Rule 3.850 Motion and rejected by the postconviction court, this Court will "look through" the Second DCA's silent affirmance and consider the postconviction court's rationale for denying those claims. *See Sellers*, 138 S. Ct. at 1192.

### A.   Grounds One and Two

In Ground One, Petitioner claims that the trial court lacked jurisdiction to prosecute her. (Doc. 1 at 6). Specifically, she asserts that the alleged crimes were committed in Lee County, not Collier County, and that she was not afforded an opportunity to challenge venue. (*Id.*) She also argues that the "inhabitants of the community were affected by prior knowledge" of the case and that "the jurors could not possibly put these matters out of their minds even when they were polled by the trial court." (*Id.* at 7). Finally, she asserts that trial counsel was ineffective for failing to challenge venue. (*Id.* at 6). In Ground Two, she asserts that the postconviction court erred by denying this claim before first giving her an opportunity to amend her Rule 3.850 Motion and that Counsel was ineffective for failing to preserve the claim by either filing a motion for a change of venue or objecting to the trial court's jurisdiction. (*Id.* at 7, 9).

In grounds one and two of her Rule 3.850 Motion, Petitioner raised the issues of whether Lee County (instead of Collier County) was the proper venue for her trial and whether Counsel was constitutionally ineffective for failing to challenge venue.   (Doc. 13-2 at 736–39).   The state responded to the grounds. (Doc. 13-3 at 3–6).   The state first noted that under Florida law, "[t]he sovereign power of the State exists whether venue is properly laid out in one county or another so long as the appropriate venue is within the territorial jurisdiction of the State."   (*Id.* at 3–4 (quoting *Lane v. State*, 388 So2d 1022, 1026 (Fla. 1980)).)   Therefore, even if the primary acts comprising Petitioner's crimes were committed in Lee County, the jurisdiction of the circuit court was properly invoked.   (*Id.* at 4).   Next, the state noted that venue actually was proper in Collier County because at least one of the properties at the heart of Petitioner's scheme to defraud was located in Collier County.   (*Id.*)   The state pointed to Florida statutes providing that a defendant may be tried in any county where a portion of a crime is committed and in any county where the person exercises control over property obtained by larceny, robbery, or embezzlement.   (*Id.* at 5).   The state also noted that crimes facilitated by communications "may be tried in any county in which the dissemination originated, in which the dissemination was made, or in which any act necessary to consummate the offense occurred."   (*Id.*)   Finally, the state argued that Counsel was not ineffective for failing to challenge venue because:

(1) choice of venue is usually a matter of trial strategy; (2) Petitioner had not alleged how venue in Collier County prejudiced her; and (3) Counsel would not have been effective in a challenge because Collier County was a proper venue. (*Id.*)   The postconviction court expressly adopted the state's response and concluded that the grounds were without merit.   (Doc. 13-4 at 5).   The Second DCA affirmed without a written opinion.   (Doc. 13-5 at 346).

As to Ground One, Petitioner does not explain how she is entitled to relief under 28 U.S.C. § 2254(d).   First, Petitioner does not point to clearly established federal law showing that a criminal defendant must be tried in the same county where the bulk of her criminal transactions occurred.   Rather, she appears to frame her venue argument in terms of state law only.   But federal habeas relief does not lie for errors of state law.   *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Next, although Petitioner urges that the trial court lacked jurisdiction to consider the case under state law because venue was incorrect (Doc. 1 at 6; Doc. 16 at 5–6), she is mistaken.   In Florida, venue, unlike jurisdiction, does not involve the inherent power of the court to hear a criminal case.   *See Lane*, 388 So. 2d at 1026 ("Jurisdiction is the very power of the state to exert the influence of its courts over a criminal defendant, and it cannot be waived. Venue on the other hand is merely a privilege which may be waived or changed under certain circumstances.").

12

Finally, as to the claim that Counsel was ineffective for not challenging venue, Petitioner demonstrates neither deficient performance nor resulting prejudice. As argued by the state, "the decision regarding whether to seek a change of venue is usually considered a matter of trial strategy by counsel, and therefore not generally an issue to be second-guessed on collateral review." *Chandler v. State*, 848 So.2d 1031, 1037 (Fla. 2003) (quotation omitted). And because venue was proper in Collier County, there is no guarantee that Counsel could have successfully moved for a change of venue. Counsel was not ineffective for failing to make a futile or meritless motion. *See Brownlee v. Haley*, 306 F.3d 1043, 1066–67 (11th Cir. 2002) (recognizing that trial counsel was not ineffective for failing to preserve an issue that lacked merit). Moreover, Petitioner has not demonstrated that she would have received a more favorable outcome had she gone to trial in Lee County. Although she now speculates that she was prejudiced by pretrial publicity (Doc. 1 at 7),[3] Petitioner has not provided any evidence (here or in state court) that pretrial publicity actually existed and rendered it impossible for her to get a fair trial in Collier County. "It is the defendant's burden to overcome [the presumption

---

[3] Petitioner did not raise the issue of pre-trial publicity in state court, and it is unclear whether she raises it as a stand-alone claim here or as support for a finding of *Strickland* prejudice. In either case, the argument is unexhausted, and need not be addressed by this Court for the first time on habeas corpus review. *See Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("[H]abeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.").

of juror impartiality] and demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Ellerbee v. State*, 232 So.3d 909, 921 (Fla. 2017) (quoting *Murphy v. Florida*, 421 U.S. 794, 800 (1975)).   Here, Petitioner merely speculates that pretrial publicity may have affected the outcome.   But "speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).   Petitioner has not shown that she is entitled to habeas relief on Ground One.

As to Ground Two, Petitioner appears to argue that the postconviction court should have ordered her to augment this ground in her Rule 3.850 Motion instead of merely denying it based on the state's response.   (Doc. 1 at 7).   She asserts that the state court "abused its discretion by denying this ground without allowing the petitioner at least one opportunity to amend the pleading deficienc[ies]."   (Id.)   Petitioner clearly alleges a defect in the state court's adjudication of her Rule 3.850 Motion.   However, "an alleged defect in a [state] collateral proceeding does not state a basis for habeas relief."   *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).   Petitioner is not entitled to federal habeas relief on Ground Two.

## B.    Ground Three

Petitioner asserts that Counsel was ineffective for not moving to dismiss count two of the information.  (Doc. 1 at 9–10).   Specifically, she points out that the second amended information describes count two as follows:

> On or about December 4, 2006 in Collier County, Florida [Petitioner] did knowingly use a Public Record or knowingly use information obtained only through such public record, to facilitate or further the commission of a felony **of the 3rd degree**, contrary to Florida Statute 817.569.

(Doc. 13-2 at 42 (emphasis added)).     However, the charge is somewhat confusing because the pertinent section of Florida Statute § 817.569 reads:

> A person who knowingly uses any public record, as defined in s. 119.011, who knowingly uses information obtainable only through such public record, or who knowingly provides false information that becomes part of a public record to facilitate or further the commission of:
>
> > (2)    A felony, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat § 817.569(2) (2006).    In other words, the second amended information included the phrase "of the 3rd degree" when it should not have done so.   Petitioner argues that the inclusion of this phrase means that she was convicted of "a non-existent offense" and that Counsel should have ensured that the information was cured prior to trial.    (Doc. 1 at 10).   Petitioner raised this claim on direct appeal, and the Second DCA affirmed without a written opinion.   (Doc. 13-2 at 670).

In her brief on direct appeal, Petitioner argued that Counsel should have raised the alleged information defect before trial so that the deficiency could have been cured. (Doc. 13-2 at 642). This argument actually defeats Petitioner's ineffective assistance claim. Had Counsel acted as Petitioner now alleges he should have, the State would have merely amended the information a third time to remove the extraneous information from the description of count two. *See State v. Garcia*, 692 So. 2d 984, 986 (Fla. 3d DCA 1997) (recognizing that the state may amend an information or charging document at any time before or during trial). Therefore, the outcome of Petitioner's trial would not have changed, and there is no *Strickland* prejudice.

Moreover, a charging document is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Petitioner does not argue that she was confused as to the charge in count two or otherwise unable to offer a defense. The second amended information specifically referenced section 817.569(2) (Doc. 13-2 at 42), and the jury was properly instructed on the elements of count two. (*Id.* at 541). Competent counsel could have concluded that seeking to amend the information a third time was unnecessary. And because the information was not so defective that she was uninformed of the charge against

her, Petitioner once again cannot demonstrate *Strickland* prejudice from Counsel's failure to move to amend the second amended information.   The Second DCA's rejection of this claim was neither contrary to, nor based upon an unreasonable application of, *Strickland* and was not based upon an unreasonable determination of the facts.   Petitioner is not entitled to federal habeas relief on Ground Three.

## C.   Ground Four

Petitioner asserts that Counsel was ineffective for failing to move for a mistrial after one of the victims "made 2 loud outburst[s] that was such a level that distracted counsel from his direct examination of the Petitioner."   (Doc. 1 at 13).   She refers to two "verbal outbursts" by victim Yvonne Rose as well as some "head shaking," by Petitioner's supporters in the courtroom.   (*Id.* at 13–14).

The conduct at issue in Ground Four occurred during Counsel's direct examination of Petitioner.   The content of the alleged outbursts is not in the trial transcript.   However, it appears that Ms. Rose verbally protested when Petitioner testified that Ms. Rose did not purchase a duplex involved in the crimes at issue, was never invited to share in the purchase of the duplex, and that Petitioner only offered Ms. Rose the opportunity to split the purchase of a different house that she (Petitioner) had paid the mortgage on.   (Doc. 13-2 at 459–60).   After Ms. Rose's first comment, Counsel asked to approach the

bench, and the Court denied the request, but admonished the spectators "to be quiet in the courtroom" and "shaking heads on both sides.  Okay.  Please." (*Id.* at 459).   After Ms. Rose's second comment, the court excused the jury and scolded the spectators for their behavior as follows:

> Everyone, the jury is outside.  I need -- Miss Rose, you can hear me, and this side over too, shaking heads. Let me say something. I said this at the start in the trial.   Everyone is welcome to be in the courtroom.  We want you here.  But you cannot indicate if you like or dislike what's going on up here.   You'll all get your chance to be up here, if you're a relevant witness, under oath.   But to distract from what's going on, including head shaking, does not settle the case.   It distracts the case and upsets them.   Miss Rose, we want you in court, but you got to sit their patiently.   You have the opportunity, if the state wishes to recall you, to answer these things that you're hearing.   Do you understand that, ma'am?
> . . .
>
> Over here, the same thing. Even though y'all may not think it's big, when you shake your heads and look at each other when she says something, you agreeing with it, that's only distracting from the testimony.   Do you understand that, folks?   Y'all be here too. But any more, and we're going to have to change the rules a little bit. I don't want to do that.

(*Id.* at 460–61).   Counsel told the trial court that he heard "two verbal outbursts over my left shoulder that came from Miss Rose when I turned around.   In fact, it caused me to lose my train of thought."   (*Id.* at 461.)   The judge once again noted that he "saw head shaking on the left" and reminded the spectators that the jury could see them.   He threatened to send them outside if they continued to "distract from this trial."   (*Id.* at 462).   Petitioner now argues that Counsel's failure to move for a mistrial or a curative

instruction "allowed a potentially inflammatory outburst to unduly prejudice the jury[.]" (Doc. 1 at 14). Petitioner raised this issue in her brief on direct appeal, and the Second DCA affirmed her conviction without a written opinion. (Doc. 13-2 at 670).

As noted, an appellate court's denial of an ineffective assistance claim, even without a written opinion, is entitled to section 2254(d) deference. *Harrington*, 562 U.S. at 98. And from its own review of the record, the Court concludes that Petitioner has not shown deficient performance or *Strickland* prejudice from Counsel's failure to seek a mistrial or curative instruction based on Ms. Rose's comments. After the comments, the trial court noted that some spectators in the courtroom were shaking their heads in support of Petitioner, and Counsel could have reasonably concluded that this show of support was helpful to Petitioner's defense. Likewise, we do not know the content of Ms. Rose's comments, and Counsel could have reasonably concluded that they were not particularly harmful to the defense or that they reflected badly on the victim.

Finally, Petitioner offers no evidence of prejudice and only speculates that the jury was affected by Ms. Rose's comments. But "*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" had Counsel performed as Petitioner now argues he should have. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009)

(quoting *Strickland*, 466 U.S. at 694).   Petitioner cannot meet this burden with mere speculation.   *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (explaining that conclusory allegations of ineffective assistance of counsel are insufficient to prove *Strickland* prejudice); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (same).   Petitioner has not met her burden on either prong of *Strickland*, therefore, she is not entitled to federal habeas relief on Ground Four.

### D.   Ground Five

Petitioner asserts that trial counsel was ineffective for failing to move for a judgment of acquittal on both counts.   (Doc. 1 at 17–18).   She argues, without elaboration, that the evidence presented at trial was insufficient to support either of her convictions.   (*Id.* at 17).   In her brief on direct appeal, Petitioner argued that Counsel should have moved for a judgment of acquittal on count one based on an argument that there was no direct evidence of her intent to defraud the victims.   (Doc. 13-2 at 651).[4]   And, because Florida law

---

[4] Respondent argues that the portion of this claim referring to count two is unexhausted because Petitioner did not raise it in her brief on direct appeal.   (Doc. 13 at 33).   And upon review of the record, it appears that Petitioner did not exhaust this claim as it relates to count two.   However, the Court need not consider whether cause exists for failing to exhaust this claim because even if exhausted, Petitioner is not entitled to federal habeas relief.   *See* 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").   Count two relies on much of the same evidence as count one.   And, as discussed *infra*, the Court finds that the evidence against Petitioner on both counts was overwhelming.

provides that "where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypotheses if innocence." (*Id.* at 650). The Second DCA affirmed her conviction without a written opinion. (*Id.* at 670).

Again, without a written opinion from the Second DCA, the Court must determine whether there was any reasonable reason for the state to deny relief on this claim. *Harrington*, 562 U.S. at 102. Because this is an ineffective assistance claim (and Petitioner is required to demonstrate *Strickland* prejudice), the Court first considers whether a motion for judgment of acquittal was likely to succeed. Under Florida law, a motion for a judgment of acquittal is designed to challenge the legal sufficiency of the state's evidence. *State v. Williams*, 742 So. 2d 509, 510 (Fla. 1st DCA 1999). In moving for a judgment of acquittal, a defendant admits not only the facts offered in the evidence, but also every reasonable conclusion favorable to the state that the fact-finder might fairly infer from the evidence. *Williams*, 742 So.2d at 510 (citing *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974)). If the state presents competent evidence to establish each element of the crime, a motion for a judgment of acquittal should be denied. *Id.* at 510. In addition, "[t]he credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal." *Lynch*, 293 So. 2d at 45. In other words, a trial

court may not grant the motion for a judgment of acquittal unless the evidence, when viewed in a light most favorable to the state, fails to establish a prima facie case of guilt.  *Id.*

To convict Petitioner on count one (scheme to defraud), the jury was required to find that she:  (1) engaged in a systematic ongoing course of conduct; (2) with the intent to defraud; and (3) that as a result in the scheme to defraud she temporarily or permanently deprived another person of their right to property or a benefit therefrom, or appropriated property to her own use or to the use of any person not entitled thereto.  (Doc. 13-2 at 539–40).  To convict Petitioner on count two (criminal use of public records) the jury was required to find that she knowingly used any public record or information obtainable through such public record in facilitation or furtherance of a felony scheme to defraud.  (*Id.* at 541).  The evidence introduced at trial of Petitioner's guilt on both counts was overwhelming.

### 1.    Facts Relating to Yvonne Rose

Yvonne Rose testified that Petitioner asked her to split the purchase of an undeveloped plot of land in Naples, Florida for $120,000.  (Doc. 13-2 at 20, 202–04). Ms. Rose gave Petitioner $10,000 and a cashier's check for $50,000. (*Id.* at 204, 217–20, 209–10).  In exchange, Petitioner gave her a quitclaim

deed[5] that Ms. Rose believed was for the plot of land, Unit 49 in Golden Gate Estates ("Unit 49").   (*Id.* at 201–03, 215).   However, Ms. Rose does not own the plot of land she thought she purchased.   (*Id.* at 215-16).   Rather, at the time Unit 49 belonged to Ana Cochisa.   Ms. Cochisa testified that she did not sell the lot and does not know Petitioner or Ms. Rose.   (*Id.* at 305–07).   Vicki Downs, the director of records at the Collier County Property Appraiser's Office, testified that Petitioner never had any title or right to Unit 49, and at the time Petitioner gave the quitclaim deed to Ms. Rose, the true owner of the property was Ana Cochisa.   (*Id.* at 320–23, 326–27).

Ms. Rose also testified that Petitioner later approached her about purchasing a duplex for $260,000.   (Ex. 13-2 at 225–26).   Petitioner helped Ms. Rose remortgage her home for $176,000 to pay for the duplex.   The money was to be used to pay a $50,000 equity loan she had taken to "buy" Unit 49 and the remainder was to go towards the purchase price of the duplex.   (*Id.* at 239–42).   Ms. Rose testified that did not agree to have $75,000 of the money wired to Petitioner's personal account and that she did not agree to have $25,000 wired to the account of Bruce and Janice McKay, who she did not know.   (*Id.*)[6]

---

[5] The quitclaim deeds that Petitioner gave to the victims contained the legal descriptions of the property kept in the official records of the Collier County Property Appraiser's Office. (Doc. 13-2 at 322).

[6] Janice McKay testified that she sold a house to Petitioner in 2006 for $640,000.   (Doc. 13-2 at 340–42).   Petitioner obtained financing for $500,000 and Ms. McKay gave Petitioner a second mortgage for $140,000.   (*Id.* at 343).   Additionally, Petitioner owed McKay $25,000

Later, Ms. Rose's children looked through her paperwork and found that no money was ever used to purchase a duplex. (*Id.* at 262–63, 265–66, 268). Ms. Rose does not own the duplex she thought she had purchased. (*Id.* at 262–63). Rather, Anadenia Liy testified that she owned the duplex in Golden Gate. (*Id.* at 310–11). Petitioner had approached Ms. Liy about buying the duplex. (*Id.* at 311). However, Petitioner never paid the amount agree upon, and the sale never went through. (*Id.* at 313, 316). Ms. Liy testified that she never offered to sell the duplex for $260,000. (*Id.* at 317). Ms Downs also testified that the duplex was owned by Anadenia Liy and that Petitioner never owned or had any interest in the property. (*Id.* at 336).

Petitioner owned a house across the street from the duplex. Ms. Downs testified that Petitioner signed a warranty deed for the house that appeared to transfer the property to Ms. Rose. (*Id.* at 328–30). However, six days after the date of the deed, a final judgment of mortgage foreclosure was entered relating to the property. (*Id.* at 330–31). Thereafter, an order was entered dismissing the final summary judgment that would have returned the property to Petitioner and Lance Parker. (*Id.* at 331–32). Detective Thomas Muscato of the Collier County Sheriff's Office testified that, although Ms. Rose believed

---

for closing costs that she told her she would pay after she sold a lot she owned. (*Id.* at 346.) In August of 2006, McKay received $24,880 by wire, listing a borrower of Yvonne Rose. (*Id.* at 348). However, she had never lent money or entered into any agreements with Ms. Rose. (*Id.* at 348–50).

she was buying a duplex for $260,000, she actually bought a home owned by Forbes for $420,000 that was in foreclosure.   (*Id.* at 423–44).

Detective Muscato testified that he was contacted by Ms. Rose's attorney who suspected that Ms. Rose had been the victim of a crime.   (Doc. 13-2 at 410). Detective Muscato subpoenaed Petitioner's bank records, and they showed a transfer into the account of $75,120 that came from the refinancing of Ms. Rose's home and $24,880 to the McKays—also from the refinancing of Ms. Rose's home.  (*Id.* at 420, 423).   Detective Muscato estimated the total loss to Ms. Rose to be approximately $646,000.   (*Id.* at 423–426).

### 2.   Facts Relating to Juliet Washington

Juliet Washington testified that she gave $13,000 to Petitioner so that she could purchase a lot at 512 Palora Avenue in Lehigh Acres.   (Doc. 13-2 at 357–59).   She also agreed to purchase a lot on Berry Street (Lot 14) for $25,000.  (*Id.* at 359).   However, instead of giving the money to Petitioner, Ms. Washington wired the money directly to the Tennessee owner of Lot 14. (*Id.* at 359–62).   Thereafter, Petitioner gave her a deed, but when Ms. Washington tried to record it, she saw that Lot 14 had recently been transferred to someone named Melissa Tankoo. [7]  (*Id.* at 361–64).   Ms. Washington contacted Petitioner who told her that she had incorrectly entered

---

[7] Melissa Tankoo testified that she bought the lot from Petitioner for $35,000 on June 13, 2005, and still owns the property.   (Doc. 13-2 at 396–98).

the wrong property number and gave her a new deed, this time for Lot 13.   (*Id.* at 364–65).   However, Ms. Washington subsequently learned that she did not own Lot 13 or the lot on Palora Avanue.   (*Id.* at 365).   Ms. Washington confronted Petitioner who returned $12,500 to Ms. Washington.   (*Id.* at 365–66).   However, when she tried to get the rest of her money returned, Petitioner stopped taking Ms. Washington's calls.   (*Id.* at 366).

Detective Muscato testified that Petitioner received $13,000 and $25,000 into her account from Ms. Washington.   (Doc. 13-2 at 424–25).   Petitioner used the $25,000 to purchase Lot 14 in her own name and then sold it to Melissa Tankoo for $35,000.   (*Id.* at 425).   When Ms. Washington asked for the deed, Petitioner gave her the quitclaim deed for Lot 13, which she did not own.   (*Id.*)   Petitioner eventually returned $12,500, so Ms. Washington's total loss was $25,500.   (*Id.*)

### 3.   A motion for judgment of acquittal would not have been granted.

As noted, Petitioner argued in her brief on direct appeal that Counsel should have moved for a judgment of acquittal on count one because this is a solely circumstantial evidence case, and the trial court would have been required to grant a motion to acquit if such motion had been made.   However, ample evidence—both direct and circumstantial— was presented at trial showing that Petitioner engaged in a course of conduct designed to mislead the

victims into believing that she was facilitating their purchase of real estate, while she actually diverted the victims' money for her own purposes.   The jury heard the testimony of Detective Muscato, an employee of the Collier County Property Appraiser, the victims, and the true owners of the subject pieces of property.   They learned that money was transferred from the defendants' accounts into Petitioner's bank account, and that the victims believed it was for the purchase of property.   Testimony and other evidence was presented showing that Petitioner then used the Collier County Property Appraiser property descriptions to create false quitclaim deeds to lull the victims into believing the transfers were legitimate.   And while Petitioner argues that the state produced no direct evidence of her intent to defraud, the law in Florida "is clear that a trial court should rarely, if ever, grant a motion for judgment of acquittal on the issue of intent." *Washington v. State*, 737 So.2d 1208, 1215 (Fla. 1st DCA 1999).   The Court sees no error in the appellate court's rejection of this claim, much less error that is so clear that there is no possibility for fairminded disagreement. *Harrington*, 562 U.S. at 103.   Petitioner is not entitled to federal habeas corpus relief on Ground Five.

### E.   Ground Six

Petitioner asserts that Counsel was ineffective for failing to obtain a handwriting expert to verify the signatures on documents that Ms. Rose denied signing and for allowing Ms. Rose to testify at trial regarding Petitioner's

handwriting.   (Doc. 1 at 19).   In her Rule 3.850 Motion, Petitioner argued that Counsel was ineffective for not obtaining an expert to analyze Ms. Rose's handwriting.   (Doc. 13-2 at 747–49).   In its response, the state argued that Counsel's performance was not deficient because a lay person is competent to testify as to handwriting.   (Doc. 13-3 at 7).   The state noted that "[t]here is no merit to the Defendant's argument that an expert handwriting analyst was required to testify to tell the jury who signed what document and where.   As fact finder, the jury was free to make the factual finding in this regard.   As such, counsel was not constitutionally ineffective for failing to obtain a handwriting expert."   (*Id.* at 8).   The state court denied the claim on the merits by adopting the state's response.   (Doc. 13-4 at 5).   The Second DCA affirmed without a written opinion.   (Doc. 13-5 at 346).

Petitioner does not explain how the state courts' rejection of Ground Six was contrary to *Strickland* or based upon an unreasonable determination of facts.   And even if the state erroneously rejected this claim on *Strickland*'s performance prong, Petitioner has produced no evidence from a handwriting expert showing that Ms. Rose lied about signing any of the documents. Petitioner merely speculates that—had defense counsel called a handwriting expert—the expert might have determined that Ms. Rose signed all the documents that bore her signature and might have testified to such.   But mere speculation that favorable evidence may exist and that an expert witness

would have testified to as much is insufficient to show either deficient performance or prejudice under *Strickland*.   *See Finch v Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016) ("Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with his claims is mere speculation and does not entitle him to habeas relief."); *Sullivan v. DeLoach*, 459 F.3d 1097, 1108–09 (11th Cir. 2006) (recognizing that when a petitioner raises an ineffective assistance claim based on counsel's failure to call a witness, the petitioner carries a heavy burden to show prejudice "because 'often allegations of what a witness would have testified to are largely speculative'") (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)); *Tejada*, 941 F.2d at 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

To the extent Petitioner argues that Counsel should have obtained an expert to analyze her own signatures to ensure that they were not forged, the postconviction court denied this claim after an evidentiary hearing.   (Doc. 13-5 at 156).   The court determined that Petitioner had not presented evidence at the hearing to show that any of her signatures were actually forged and also noted that Petitioner had testified both at trial and the evidentiary hearing that she had prepared and/or signed quitclaim deeds for properties in question. (Doc. 13-5 at 156).   The Second DCA affirmed without a written opinion.   (*Id.*

at 346).    Instead of showing how the state court's conclusions were contrary to *Strickland* or based upon an unreasonable determination of the facts, Petitioner now argues that she "had no way of obtaining, pay[ing] for an expert" at the hearing.    (Doc. 1 at 19).    However, as already noted, a defect in a state collateral proceeding does not provide a basis for habeas relief.    *Quince*, 360 F.3d at1262.

And finally, even if exhausted, Petitioner's new claim that Counsel was ineffective for allowing Ms. Rose to testify about Petitioner's signature would be denied on the merits.    Petitioner does not point to a single instance where Ms. Rose actually testified as to Petitioner's handwriting.    And it has long been established that a lay witness may testify as to the signature of the defendant, when that witness has testified that he or she had seen the defendant sign his name on different occasions and thought he was familiar with defendant's signature.    *Pittman v. State*, 41 So. 385 (Fla. 1906).    To the extent Ms. Rose even testified about Petitioner's signature, Counsel had no grounds on which to object, and was not ineffective for failing to do so.

The state courts' conclusion that Petitioner had not demonstrated deficient performance nor resulting prejudice from Counsel's failure to call a handwriting expert at trial was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.    Petitioner is not entitled to federal habeas relief on Ground Six.

### F.    Ground Seven

Petitioner argues that Counsel should have objected when the prosecutor referred to her as a "spider" and her victims as "prey" in his opening statements after the trial court instructed the prosecutor not to make such comments. (Doc. 1 at 22).   Petitioner raised this claim in her Rule 3.850 Motion, and the postconviction court denied the claim on *Strickland*'s performance prong because Counsel actually had objected, but was overruled.   (Doc. 13-4 at 5–6). The Second DCA affirmed without a written opinion.   (Doc. 13 at 346).   A review of the trial transcript supports the state courts' rejection of Ground Seven.

Prior to trial (and outside the presence of the jury), the prosecutor told the court that he planned to use a PowerPoint presentation as a visual aid during his opening statements.   (Doc. 13-2 at 171-73).   Counsel objected to the use of some of the words and photographs the state planned to use in the presentation.   (*Id.* at 171).   Specifically, Counsel objected to use of Petitioner's photograph and the term "prey" as in a "lion hunting an animal." (*Id.* at 172).   The prosecutor argued that the word was part of the state's "theme" and that he should be allowed to use a demonstrative aid.   (*Id.* at 171–72).   The court reviewed the statement and told the prosecutor that he could not use Petitioner's photograph in the presentation.   (*Id.* at 173).   Upon further review, the following exchange occurred:

| | | |
|---|---|---|
| Court. | Now the next one you have is – you're going to say the evidence is going – that you believe the evidence is going to show the following, right? | |
| State. | Yes.   Right. | |
| Court. | Okay.   I think I'm gonna have to strike prey. | |
| State. | Why? | |
| Court. | Because I – I just think it's just – | |
| State. | So. I can't say that the defendant was like a predator and the victim her prey? | |
| Court. | No, I just said you can't highlight. | |
| State. | Okay. | |
| Court. | It's like having the picture of a crime scene when you use too much blood.   You can describe how it looked but you can't – | |
| State. | That's fine. | |

(Doc. 13-2 at 173).   At the beginning of the state's opening statement, the prosecutor stated that the jury would "hear that Yvonne Forbes is like a spider luring prey into her web, only Yvonne Forbes['s] web is a web of greed."   (*Id.* at 183).   Counsel objected, but was overruled.   (*Id.*)   Thereafter, the prosecutor did not use the word "spider" again, and only used the word "prey" two additional times—once when referring to Ms. Rose, and once when referring to Ms. Washington.   (*Id.* at 184, 189).

Counsel had no grounds on which to object to the comments.   The trial court did not prohibit the state from using the spider/prey analogy.   Rather, it

said that the prosecutor could not "highlight" the word "prey" in his PowerPoint presentation.   Moreover, when Counsel objected to the use of the terms, he was overruled.   Therefore, the state court reasonably concluded that Counsel's performance was not deficient for failing to further object, and Petitioner is not entitled to federal habeas relief on Ground Seven.

## G.   Ground Eight

Petitioner asserts that Counsel was ineffective for withdrawing his motion for a statement of particulars.   (Doc. 1 at 25).   She appears to argue that—because no statement of particulars was filed—the state did not prove that she defrauded her victims of more than $50,000, the threshold amount required for a conviction on scheme to defraud.   (*Id.*)

Petitioner raised this claim in her Rule 3.850 Motion.   In response, the state argued that Counsel withdrew the motion for a statement of particulars because it was no longer necessary.   Specifically, the state had filed several amended informations before trial and also, "the specific information that defense counsel requested was learned during the discovery process."   (Doc. 13-3 at 8).   The postconviction court adopted the state's response and denied the claim.   (Doc. 13-4 at 5).   The Second DCA affirmed without a written opinion.   (Doc. 13-5 at 346).

Petitioner does not explain how the state courts' adjudication of this claim was so unreasonable that it entitles her to relief under section 2254.   On

October 15, 2008, Counsel filed a motion for statement of particulars requesting "the place, date, and all other material facts of the crime charged and are known to the prosecuting attorney, including the names of persons intended to be defrauded." (Doc. 13-2 at 37). Trial did not occur until more than a year and a half later. (*Id.* at 47). Petitioner provides no evidence or argument to rebut the presumption of correctness given the state court's factual determination that the information sought in the motion for a statement of particulars was provided to Petitioner during the eighteen months between the motion and trial. 28 U.S.C. § 2254(e)(1). Finally, to the extent Petitioner argues that the lack of the statement of particulars absolved the state of proving that the amount defrauded from her victims exceeded $50,000, the state offered evidence at trial showing that Petitioner defrauded the victims of approximately $671,200. (Doc. 13-2 at 425–26).

Therefore, the state courts reasonably concluded that Petitioner has demonstrated neither deficient performance nor resulting prejudice from Counsel's withdrawal of the motion for a statement of particulars, and she is not entitled to federal habeas relief on Ground Eight.

### H.    Ground Nine and Ten[8]

Petitioner argues that Counsel was ineffective for failing to object to the state's introduction of *Williams* rule[9] prior-bad-acts evidence elicited from Ms. Washington.   ([Doc. 1 at 28](#)).   She also argues that Counsel should have objected to the state's failure to furnish a statement of the prior bad acts or offenses it intended to introduce and then sought a mistrial.   (*[Id.](#)* [at 30](#)).

When she raised this claim in her Rule 3.850 Motion, Petitioner referred to a portion of Ms. Washington's trial testimony where she said that Petitioner had previously given her deeds for property that she did not own.   ([Doc. 13-2](#) [at 754](#)–55).   Specifically, Ms. Washington was questioned by the state on re-direct as follows:

> Q.    Getting back to the wire that you sent.   Why did you wire it directly to Miss Bilbrey?
>
> A.    When Miss Forbes approached me regarding money to assist her to buy the land, she wanted me to do it in both of us – for both of our interest.   She said to me that when this is done, I will receive the land and the money she owes me.
>
> And I said to her, because of past experiences, I am not going to give her any money from my account to hers or in any check

---

[8] Petitioner labels this Ground as "Ground Nine and Ten." ([Doc. 1 at 28](#)).   Petitioner raised a similar claim as Ground Nine in the ninth ground of her Rule 3.850 Motion. However, in Ground Ten of her Rule 3.850 Motion, she argued that Counsel was ineffective for failing to request a *Williams* rule jury instruction.   (Doc. 13-2 at 757).   Petitioner does not appear to raise the jury instruction claim in this habeas petition.

[9] The *Williams* rule is a state-law evidentiary rule allowing the state to introduce similar fact evidence of other crimes or acts by the defendant to prove a relevant matter in the prosecution of the crimes for which he or she is on trial.   *[Williams v. State](#)*, [110 So. 2d 654](#) [(Fla. 1959)](#); [Fla. Stat. § 90.404(2)](#).

> form, so I would rather deal directly with the person who's selling the land. And then she provided me with the information for wiring the money to the seller.
>
> Q.   Why didn't you trust her at that point?
>
> A.   Because I had an experience in the past where she had given me reason to doubt her.
>
> Q.   And did that involve some other lots?
>
> A.   She had given me deeds before, and the deeds were not – the lots weren't belonging to her.  And I had destroyed it and spoken to her about it, and then she gave me the lots in Palora.
>
> A.   But you trusted her?
>
> A.   I trusted her because we had a relationship more than just – we had a friendship at the time.

(*Id.* at 379–80).    In its response to the Rule 3.850 Motion, the state argued that the testimony identified in Petitioner's motion did not constitute *Williams* rule evidence because "[b]y her own admission, that testimony addresses an act which [Petitioner] was on trial for."    (Doc. 13-3 at 9).    Therefore, the state concluded that: (1) no *Williams* rule instruction was required or relevant; (2) Counsel's performance was not deficient because any objection would have been meritless; and (3) Counsel could not have been ineffective for not requesting an irrelevant jury instruction.    (*Id.*)    In denying relief, the postconviction court adopted the state's response.    (Doc. 13-4 at 5).    The Second DCA affirmed without a written opinion.    (Doc. 13-5 at 346).

By adopting the state's response, the postconviction court determined that Counsel's performance was not deficient for failing to object to Ms. Washington's statements under Florida's *Williams* rule because the statements did not fall under the rule.  To now find Petitioner entitled to federal habeas corpus relief on this basis, the Court would first have to find that the state courts incorrectly determined that Ms. Washington's testimony did not fall under the *Williams* rule.  However, a challenge to the admission of evidence under a *Williams* rule determination is plainly a matter of state evidentiary law.  *See Williams*, 110 So. 2d at 663 ("[E]vidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible[.]").  And "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. at 67–68; *see also Cox v. Montgomery*, 718 F.2d 1036, 1038 (11th Cir. 1983) ("Federal habeas courts do not generally sit to correct erroneous evidentiary rulings by state courts unless the error produces fundamental unfairness.")

Finally, this claim also fails to satisfy *Strickland*'s prejudice prong. Given the clear and overwhelming amount of evidence presented at trial showing that Petitioner engaged in a scheme to defraud Ms. Rose and Ms. Washington, Petitioner cannot establish that the comments elicited from Ms. Washington regarding prior instances of faulty quitclaim deeds would have

resulted in a different outcome at trial. Thus, Petitioner is not entitled to federal habeas relief on Grounds Nine and Ten.

## I.  Ground Eleven

Petitioner asserts that Counsel was ineffective for failing to call witnesses Paul Scola, Dustin Tanner, Owen Morgan, Martin Booth, and Howard Elliot at trial. (Doc. 1 at 30–31). She claims that the witnesses would have shown that Ms. Rose's trial testimony was untruthful. (*Id.* at 33). Petitioner raised this claim in her Rule 3.850 Motion, and the postconviction court granted an evidentiary hearing. (*Id.*) However, her postconviction counsel was unable to procure four of the five witnesses to testify at the hearing. (*Id.* at 30). The postconviction court thus determined that "[w]ith respect to Dustin Tanner, Owen Morgan, Martin Boothe, and Howard Elliet, . . . the court finds that since the witnesses were not present, Defendant has failed to demonstrate an entitlement to relief." (Doc. 13-5 at 155 (citing *State v. Hanania*, 715 So. 2d 984, 986 (Fla. 2d DCA 1998) (a defendant cannot demonstrate prejudice for an alleged failure to depose or call a witness without presenting evidence as to the nature of that witness's prospective testimony)).) Petitioner now argues that she was "prejudice[d] by not receiving [] assistance from the court in locating the witnesses or compelling their appearance." (*Id.*) As to Paul Scola—the only witness who testified at the hearing—the postconviction court concluded that Mr. Scola had no specific recollection of

Petitioner or of any particular instances involving her. (*Id.*) The court concluded that "[b]ased upon Scola's testimony at the evidentiary hearing, the Court finds that Defendant has failed to demonstrate an entitlement to the relief requested." (*Id.*) The Second DCA affirmed with a written opinion. (Doc. 13-5 at 346). A review of the record supports the state courts' conclusions.

First, witness Mr. Scola, the former owner of First Priority Title, appeared at the evidentiary hearing. He testified that he had no specific recollections of Petitioner or Yvonne Rose, although he remembered something on the news about Petitioner. (Doc. 13-5 at 89–90). When shown documents purportedly signed by Ms. Rose and witnessed by him, he agreed that it appeared that Ms. Rose had signed the documents. (*Id.* at 95, 98, 100). However, he also agreed that he had no independent recollection of the transactions and that his statements were not based on memory. (*Id.* at 105). In her Rule 3.850 Motion, Petitioner alleged that Mr. Scola would have testified that she did "not order Ms. Rose to just sign here and there and that, by law he had to ensure that Ms. Rose understood what she was signing." (Doc. 13-2 at 759). However, Mr. Scola's testimony at the evidentiary hearing did not support this allegation, and the state courts' rejection of this claim was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.

As to the other witnesses, the postconviction court denied this claim because Petitioner did not procure their attendance at the Rule 3.850 evidentiary hearing.  Likewise, other than her vague assertions that these witnesses would have refuted Ms. Rose's trial testimony, Petitioner offers this Court no evidence showing what their actual testimony would have been. Mere speculation that favorable evidence may exist does not warrant habeas relief.  *See Johnson*, 256 F.3d at 1187 ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.' ") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness or on affidavit.   A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").   Petitioner has not satisfied *Strickland*'s prejudice prong on Ground Eleven, and she is not entitled to federal habeas relief.

Finally, to the extent Petitioner asserts that the postconviction court erred by not helping her procure the attendance of the four other witnesses at the evidentiary hearing on her Rule 3.850 Motion, she is not entitled to federal

habeas relief.   As noted before, "an alleged defect in a [state] collateral proceeding does not state a basis for habeas relief."   *Quince*, 360 F.3d at1262.

## J.    Ground Twelve

Petitioner asserts that Counsel was ineffective for failing to object to the prosecutor's repeated statement during closing argument that the case was about "a failure to do right."   (Doc. 1 at 33).   She asserts that that "[f]ailure to do right is not an element of scheme to defraud and use of public record." (*Id.*)   She argues that "this argument planted an improper seed of guilt in the jury's mind that greatly affected their ability to reach a fair decision."   (*Id.*)

Petitioner raised this claim in her Rule 3.850 Motion, and in response, the state argued that none of the comments were objectionable under current case law.   (Doc. 13-3 at 10).   As a result, Counsel was not ineffective for failing to raise a meritless claim, and Petitioner could not demonstrate prejudice.   (*Id.*)   The postconviction court denied the claim on the merits by adopting the state's response.   (Doc. 13-4 at 4).   The Second DCA affirmed with a written opinion.   (Doc. 13-5 at 346).   A review of the record and applicable state law, supports the state courts' adjudication of Ground Twelve.

The prosecutor began his closing argument with the following statement:

> A failure to do right.   That's what this case can be boiled down to.
> Those few simple words.   A failure to do right.   Mrs. Forbes failed
> to do right by Mrs. Washington and Mrs. Rose.

(Doc. 13-2 at 512).   Thereafter, the prosecutor reviewed all the evidence offered at trial, and argued to the jury that the evidence showed that Petitioner had failed to do right by her friends.   (*Id.* at 516, 517, 417).   Under Florida law, a prosecutor may not "unduly create, arouse and inflame the sympathy, prejudice and passions of [the] jury to the detriment of the accused."   *Cardona v. State*, 185 S. 3d 514, 520 (Fla. 2016).   However, a prosecutor may "review the evidence and . . . explicate those inferences which may reasonably be drawn from the evidence."   *Merck v. State*, 975 So. 2d 1054, 1061 (Fla. 2007). Therefore, the courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.   *See Lukehart v. State*, 776 So.2d 906 (Fla. 2000).

When considered in the context of the state's entire closing argument, reasonable competent counsel could conclude that the prosecutor's comments were not improper appeals to the passions of the jury and did not, as Petitioner alleges, argue facts not in evidence.   Rather, reasonable counsel could conclude that the prosecutor properly argued that the testimony and other evidence at trial showed that Petitioner did not "do right" by her friends when she diverted money that her friends intended to be used to purchase property to her personal use.   Accordingly, the state courts reasonably found that Counsel had no grounds on which to object to the prosecutor's statements.

Moreover, the state court trial judge instructed the jurors on the elements of each crime and told them that they must follow the law as set out in his jury instructions.   (Doc. 13-2 at 546–47).   This remedied any prejudice from the prosecutor's comments.   *See United States v. Jones*, 225 F. App'x 848 (11th Cir. 2007) (noting that the trial court "remedied any prejudice [from the prosecutor's improper closing argument comments] with jury instructions that counsels' statements and arguments were not in evidence.")   Petitioner satisfied neither the performance nor prejudice prongs of *Strickland*, and she is not entitled to federal habeas relief on Ground Twelve.

## K.   Grounds Thirteen and Fourteen

Petitioner addresses Grounds Thirteen and Fourteen in the same claim. (Doc. 1 at 35).   In Ground Thirteen, Petitioner argues that Counsel was ineffective for failing to object or move for a mistrial based on the court's limitation on his closing argument.   In Ground Fourteen, Petitioner argues that Counsel was ineffective for failing to conduct a proper closing argument. (*Id.* at 35–38).   These related claims are based on a portion of Counsel's closing argument in which the prosecutor misheard Counsel's comments and thought he said "attempt" instead of "intent."   Specifically, near the beginning of closing, Counsel argued that the state had not proven that Petitioner intended to defraud the victims:

Counsel.    One of the things the state has to prove when they were going through that before about the land, they got to prove intent.   Okay?   If Miss Forbes believed they were making a legitimate   transaction and were ripped off anyway.   That's not –

State.    Objection.   May we approach?

Court.    Ladies and gentlemen, give us one second, please.

(side bar conference held)

State.    Attempt is not one of the elements

Court.    I'm sorry.

State.    Attempt is not an element that the state has to prove.

Court.    This is closing.   Okay.   He heard you.

(sidebar conference concluded)

Court.    Okay.   Thank you.

Counsel.    Okay.   I take that back.   If you want to say intent is not an element, that's true.   What is true, though, is it has to be knowingly done.   Same thing for my purposes because it wasn't knowingly done.   She thought that it was a legitimate   transaction.   She did not do it knowingly.

(Doc. 13-2 at 529–30).   Petitioner raised these claims in her Rule 3.850 Motion.   (*Id.* at 765–68).   In response, the state briefly argued that Petitioner could not prove *Strickland* prejudice from the misunderstanding.   (Doc. 13-3 at 10).   The postconviction court summarily denied these claims by adopting the state's response.   (Doc. 13-4 at 5).   The Second DCA affirmed with a written opinion.   (Doc. 13-5 at 346).   A review of the record supports the state

44

courts' conclusion that Petitioner did not demonstrate *Strickland* prejudice from the prosecutor's interruption and misinterpretation of Counsel's words.

First, Counsel made a lengthy and thorough closing argument (Doc. 13-2 at 522–33) during which he argued that the state had not shown that Petitioner "knowingly" defrauded the victims and pointed out that all real estate agreements had been oral and "what we have here is a whole lot of bad business.   Horrible, awful investments by everybody." (*Id.* at 532).   At no point was it suggested to the jury by counsel or the prosecutor that it could find Petitioner guilty if she did not intend to defraud the victims.   Moreover, the trial court correctly instructed the jury that before it could find Petitioner guilty of scheme to defraud, the state must prove the following elements beyond a reasonable doubt:

> One, the defendant was engaged in the systematic ongoing course of conduct.  **Two, the defendant did so with the intent to defraud.**   Three, as a result of the scheme to defraud, the defendant temporarily or permanently deprived another person of their right to property or a benefit therefrom, or the defendant appropriated property to their own use or to the use of any person not entitled thereto.

(Doc. 13-2 at 539–40 (emphasis added)).   Therefore, the jury was correctly instructed that, to be found guilty of scheme to defraud, Petitioner must have acted with an <u>intent</u> to defraud.

To now find prejudice under *Strickland* on these claims, this Court would have to first find that the jury ignored the judge's clear instructions.

However, "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see also In re Price*, 964 F.3d 1045, 1049 (11th Cir. 2020) ("We not only can, but we must, presume that juries follow their instructions.   The presumption that they do is rock solid law enshrined in a host of decisions of the Supreme Court and this Court.")   Petitioner has offered no evidence to rebut the presumption that the jury followed the trial court's clear instructions.

Given that Counsel argued that Petitioner had to act "knowingly" and given the trial court's clear jury instructions on intent, the state court's conclusion that Petitioner cannot demonstrate prejudice from Counsel's failure to properly correct the prosecutor's misunderstanding was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Grounds 13 and 14.

### L.    Ground Fifteen

Petitioner asserts that Counsel was ineffective for failing to present sufficient evidence at trial.   (Doc. 1 at 38–40).   Specifically, she asserts that Counsel did not offer into evidence a receipt showing that money was returned to Ms. Washington and Ms. Rose.   (*Id.* at 40).   She also asserts that Counsel did not investigate whether a title company can disburse funds after closing. (*Id.* at 39).   Finally, she claims that Counsel failed "to prepare and present the

multitude of evidence to the jury supporting the petitioner's defense." (*Id.* at 41).

Petitioner raised a similar claim in ground fifteen of her Rule 3.850 Motion, in which she also alleged that Counsel was ineffective for failing to obtain a handwriting expert to show that Ms. Rose signed and initialed all the closing documents and that Petitioner did not forge any signatures and that it was not Petitioner's handwriting on the disbursement of funds. (Doc. 13-2 at 769–72). Upon review of this claim, the postconviction court noted that Petitioner "asserts numerous allegations of ineffective assistance which consist of nothing more than conclusory or general allegations without an adequate recitation of factual details or how each of the numerous allegations of ineffective assistance prejudiced the defense pursuant to *Strickland*." (Doc. 13-4 at 7). The postconviction court dismissed the claim with leave to amend. (*Id.*) Thereafter, Petitioner filed an amended Rule 3.850 Motion in which she broke ground fifteen into three subparts. (Doc. 13-4 at 640–42). She asserted that Counsel failed to: (1) present evidence to prove that she repaid Ms. Washington (ground 15a); (2) call Owen Morgan as a witness to show that she conveyed a quitclaim deed to Ms. Rose that she could have used to recoup her loss (ground 15b); and (3) engage a handwriting expert to prove that some of the writing on documents did not belong to her (ground 15c). (*Id.*)

The postconviction court denied grounds 15a and 15b as conclusively refuted by the evidence.   (Doc 13-4 at 669).   The court allowed ground 15c to be addressed at the evidentiary hearing, after which the ground was denied on *Strickland*'s prejudice prong because Petitioner did not present any evidence showing that signatures on any documents were actually forged and because Petitioner testified at trial that she had signed the documents she now asserted were fake.   (Doc. 13-5 at 156).    In her appellate brief, Petitioner raised this claim as "argument thirteen."   (Doc. 13-5 at 267–69).   However, she did not address grounds 15a and 15b in the brief.   Rather, she argued only that Counsel was ineffective for failing to obtain a handwriting expert (ground 15c). (*Id.*)

Respondent now argues that, because Petitioner did not brief the remaining issues (grounds 15a and 15b) in her appellate brief, only the portion of the claim relating to a handwriting expert was exhausted.   (Doc. 13 at 54). Indeed, Petitioner received an evidentiary hearing on her Rule 3.850 Motion, and as a result, she was required to address all of her issues in her appellate brief, and her failure to do so constitutes a waiver of the additional claims. See *Cortes v. Gladish,* 216 F. App'x 897, 899–90 (11th Cir. 2007) (recognizing that, had the petitioner received an evidentiary hearing on his postconviction motion, "his failure to address issues in his appellate brief would constitute a waiver"); *Williams v. McDonough,* No. 8:02-CV-965-T-30MAP, 2007 WL

2330794, at *2 (M.D. Fla. Aug. 14, 2007) (finding Petitioner received an evidentiary hearing on his Rule 3.850 motion, and "[t]herefore, Petitioner was required to file a brief, he did file a brief, and his failure to address [the grounds] in his brief constitutes a waiver of those issues."); *Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997) (concluding that failure to fully brief and argue points on appeal "constitutes a waiver of these claims").

In her reply, Petitioner asserts that this claim was fully exhausted on appeal because she briefed all the initially-raised issues of ground 15 in her reply brief. (Doc. 16 at 17–18). However, it is well settled in Florida that, "[a]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief." *Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011). Moreover, a review of Petitioner's reply brief shows that she briefed only the issue of Counsel's failure to obtain a handwriting expert (ground 15c) in reply. (Doc. 13-5 at 340–41). Therefore, except for the portion of Ground Fifteen claiming that Counsel was ineffective for failing to obtain a handwriting expert (ground 15c) (already addressed in Ground Six *supra*), Ground Fifteen is subject to dismissal as unexhausted.

Even if Ground Fifteen had been fully exhausted in state court, Petitioner would not be entitled to habeas relief for the same reasons relied upon by the postconviction court. 28 U.S.C. § 2254(b)(2). Namely, Petitioner cannot demonstrate *Strickland* prejudice because she has not shown that any

of the allegedly exonerating evidence actually exists. Rather, she merely argues—without offering proof—that she would have been exonerated had Counsel presented better evidence at trial. *See Maharaj v. State*, 778 So.2d 944, 951 (Fla. 2000) (holding that the ineffective assistance claim was without merit because the conclusions to support the claim were "sheer speculation" and "[p]ostconviction relief cannot be based on speculation or possibility"). And, as noted in Grounds One, two, Four, Six, and Eleven, mere speculation that a missing witness might have provided helpful testimony is insufficient to establish that Counsel's decision not to call these witnesses was deficient. *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("In a habeas petition alleging ineffective assistance of counsel, mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof.")

The claims raised in grounds 15a and 15b of Petitioner's Rule 3.850 Motion are dismissed as unexhausted because Petitioner did not raise these claims in his appellate brief to the Second DCA after they were denied by the postconviction court. Moreover, none of the arguments raised in Ground 15 demonstrates that Petitioner is entitled to federal habeas corpus relief, and this ground is also denied on the merits.

## M.   Ground Sixteen

Petitioner asserts that Counsel was ineffective for failing to investigate and call as a witness, Mary Doughman, the notary whose name was on the quitclaim deeds relating to the transactions with Ms. Washington.   (Doc. 1 at 41).   She notes that the deeds did not have her "personal ID/driver license affixed to the deed."   (*Id.*)   She argues that she had no means to procure this witness at the evidentiary hearing on her Rule 3.850 Motion. (*Id.*)

Petitioner raised this claim in her Rule 3.850 Motion.   (Doc. 13-2 at 773).

The postconviction court denied this claim after an evidentiary hearing:

> In Ground 16 Defendant asserts that trial counsel was ineffective for failing to investigate the false acknowledgement of Defendant's notarized signature by a notary public of two of the quitclaim deeds for one of the victims. Specifically, Defendant asserts that "she was not present before the Notary Public Mary A. Dougham for the execution of two (2) quitclaim deeds presented by Ms. Washington as evidence to support her allegations of fraud."
>
> At the hearing, Defendant testified that she did not sign the deeds, was not present before the notary, and did not know who the notary was. Defendant further asserted that the notary checked the box "personally known" even though the Defendant never met the notary.   Defendant concludes that trial counsel should have investigated the notary public for fraud.   However, during cross examination Defendant admitted that it was her signature on the notarized documents.
>
> Initially, the Court notes that the Defendant failed to produce Mary A. Dougham, or a notary public at the hearing to prove that the documents were not executed properly.   Furthermore, a review of the trial transcript reveals that Defendant testified that she prepared a quitclaim deed for the lot in Golden Gate Estates, and signed the deed for 1126 Berry Street.   Defendant also

admitted at the hearing that it was her signature on the two deeds. The Court finds that Defendant's claim is refuted by the testimony at trial and the evidentiary hearing. Therefore, the Court finds that Defendant has failed to demonstrate an entitlement to the relief requested. Accordingly, Ground 16 is denied.

(Doc. 13-5 at 156–57 (citations to the record omitted)).   The Second DCA affirmed without a written opinion.   (*Id.* at 346).

As already discussed in Grounds One, Two, Six, and Eleven, a defect in a state collateral proceeding does provide a basis for habeas relief.   *Quince*, 360 F.3d at1262.   Therefore, that Petitioner was unable to procure Ms. Doughman's attendance at the evidentiary hearing does not entitle her to federal habeas relief.   And it is unclear what Petitioner believed the notary would have testified to at the hearing, even if she had testified.   Petitioner admitted preparing at least one of the fraudulent deeds (Doc. 13-2 at 407), and her entire theory of defense was that the subject real estate transactions were based on a misunderstanding with the victims—not that she (Petitioner) was the victim of a crime herself.   Also, Petitioner admitted that she signed the deeds, although she denied having them notarized or giving them to Ms. Washington.   (Doc. 13-5 at 59).   Nevertheless, Petitioner did not present the notary or any of her testimony at the evidentiary hearing (and she does not do so here).   The state courts denied postconviction relief on ground 16 of the Rule 3.850 Motion because the claim was based on speculation, and this Court does not find their conclusion to be contrary to clearly established federal law

or based upon an unreasonable determination of the facts.   *See Johnson,* 256 F.3d at 1187 (recognizing that speculation is insufficient to carry the burden of a habeas corpus petitioner).   Petitioner is not entitled to federal habeas relief on Ground Sixteen.

## N.    Ground Seventeen

Petitioner claims that Counsel was ineffective for failing to call witnesses at her sentencing hearing.   (Doc. 1 at 44).   She asserts that Counsel should have called her family members and friends to testify about her character, her ties to the community, her family history background, and to ask for leniency. (*Id.* at 44, 46).   Petitioner raised this claim in her Rule 3.850 Motion, and the postconviction court denied the claim as both speculative and insufficiently pleaded.

The postconviction court first noted that the case was facially insufficient because Petitioner did not "assert the names of the witnesses, the substance of their testimony, or how [she] was prejudiced."   (Doc. 13-4 at 8). The court also noted that Petitioner did not provide the substance of the testimony she would have given if Counsel had called her to testify or explained why the sentencing court would have been persuaded to sentence her differently.   (*Id.*)   Finally, the court concluded that the claim was too speculative to warrant relief:

However, as to the possibility that trial counsel's lack of a request for a more lenient sentence, the presentation of witnesses, or Defendant's own testimony at the sentencing hearing could have persuaded the Court to sentence Defendant differently is a claim that is too speculative in nature to warrant relief pursuant *Strickland*. *Cf. Peeples v. State*, 575 So. 2d 316 (Fla. 2d DCA 1991) ("It is ... doubtful whether one could ever be ineffective for failing to persuade a judge to depart downward from the guidelines. . . ."). The record reflects that Defendant was sentenced within the sentencing guidelines and having reviewed the transcript of the sentencing hearing, which is attached hereto, this Court believes that even if trial counsel requested a lenient sentence, presented witnesses, or presented Defendant's own testimony at the sentencing hearing, there is no guarantee or evidence to suggest that the Court would have sentenced Defendant differently.

Accordingly, even if Defendant were afforded an opportunity to amend the insufficiencies of the claims asserted in Ground 17 pursuant to *Spera*, it is inherently unbelievable that Defendant would be able demonstrate in good faith how she was prejudiced pursuant to *Strickland* because such claims of prejudice would be mere speculation. *See Montero v. State*, 996 So. 2d 888,891 (Fla. 4th DCA 2008) (citing *Grosvenor, Grosvenor v. State*, 874 So. 2d 1176, 1181 (Fla. 2004)). Accordingly, the claims asserted by Defendant in Ground 17 are without merit[.]

(Doc. 13-4 at 9). Petitioner now argues that the postconviction court should have provided her an opportunity to amend this claim prior to denying it. (Doc. 1 at 6).

To the extent Petitioner asserts that the postconviction court erred by not allowing her a chance to amend her Rule 3.850 Motion, she is not entitled to federal habeas relief. *See Quince*, 360 F.3d at1262. And, in her Rule 3.850 Motion, Petitioner did not provide the substance of her own testimony nor that

of any of the witnesses she would have liked to offer as witnesses (nor does she do so here).  (Doc. 13-2 at 774–75).  Therefore, it was reasonable for the postconviction court to conclude that any claim of prejudice was based on speculation.  Even now, Petitioner merely speculates that any of these witnesses would have testified and would have testified favorably.  She has not offered sworn testimony from any of the witnesses detailing what they would have said or explaining how their testimony would have resulted in a shorter sentence.  *See Johnson*, 256 F.3d at 1187.  Without such a showing, Petitioner cannot demonstrate *Strickland* prejudice.  *See Jones v. State*, 845 So. 2d 55, 64 (Fla. 2003) ("Postconviction relief cannot be based on speculative assertions.").  Petitioner is not entitled to federal habeas relief on Ground Seventeen

## O.    Ground Eighteen

Petitioner asserts that the cumulative effect of counsel's errors rendered her trial fundamentally unfair.  (Doc. 1 at 46).  Petitioner raised this claim in her Rule 3.850 Motion, but the postconviction court found this claim to be without merit because it had determined that each of Petitioner's "preceding claims of ineffective assistance of counsel [was] without merit."  (Doc. 13-5 at 15).  Indeed, Petitioner has not established prejudice as to any individual claim or the collective effect of any deficient performance on the trial.  *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting

claim of cumulative error since "none of [Petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"). In all events, absent Supreme Court precedent applying the cumulative error doctrine to ineffective assistance of counsel claims, the state court's denial of the claim was not contrary to, or an unreasonable application of, clearly established federal law.  *See Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009).   Therefore, Petitioner is not entitled to federal habeas relief on Ground 18.

## IV.    Conclusion

Based on the foregoing, Petitioner is not entitled to relief on the habeas claims presented here.

Accordingly, it is

**ORDERED**:

1.     The amended 28 U.S.C. § 2254 petition filed by Yvonne E. Forbes is **DENIED**.

2.     The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Petitioner, deny any pending motions as moot, terminate any deadlines, and close this case.

## Certificate of Appealability[10]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When, as here, the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

---

[10] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Upon consideration of the record, the Court declines to issue a COA. Because Petitioner is not entitled to a COA, she is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on October 18, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:   FTMP-2
Copies to:   Yvonne E. Forbes, Counsel of Record